[No. 22109.   Department Two.   February 24, 1930.]

LEWIS L. JOHNSTON, *Appellant,* v. SOPHIA R. MORTENSEN, *Respondent.*[1]

*A. O. Burmeister,* for appellant.

*Guy E. Kelly* and *Thomas MacMahon,* for respondent.

FRENCH, J.—Appellant, a bachelor, some twelve or fourteen years ago, purchased the easterly 120.58 feet of the north 1.6 acres of the south 3.2 acres of block 57 of the plat of Southeast Tacoma.  He immediately constructed his house and outbuildings on the southern portion of this tract and cultivated it, set out fruit trees, berry bushes, made it his home, resided thereon continuously, erected a fence dividing it from the balance of the tract and otherwise improved the property.

The remainder of the tract to the east belonged to appellant's brother and sister-in-law.  Some five years after appellant purchased this small tract, his brother and sister-in-law died, and appellant was appointed

[1]Reported in 285 Pac. 438.

administrator of their estate. Through some error or inadvertence which appellant assigns to his then attorney, the entire property was listed as the property of the estate, and thereafter appellant, purchasing the interest of the other heirs, became the owner of the entire tract.

Appellant then listed for sale with one Pope that portion of the tract which had formerly been owned by his brother and sister-in-law, namely, the entire tract less the east 120 feet. One Mortensen was taken out and Mr. Pope pointed out to him the exact boundaries of the tract which was to be sold, introduced him to appellant, who was then living on the easterly portion, and thereafter Mortensen, for himself and his wife, agreeing to the price and terms, purchased the land, which had been pointed out to him, under an executory contract. Mr. Pope, taking the abstract which had been left with him by appellant, prepared the description in the contract, copying this description from the caption of the abstract and describing the entire tract, that is, the north 1.6 acres of the south 3.2 acres of block 57, Mr. Pope thinking that this description covered the property which he had pointed out, Mr. Johnston paying very little attention to the matter, but assuming that the description in the contract covered the land which he intended to sell.

. The Mortensens at once went into possession of the westerly portion of this property, that is, that portion of the property which had formerly been owned by appellant's brother and sister-in-law, and appellant retained possession of the east 120 feet. The contract between these parties was not recorded, and, for a period of approximately five years, the parties lived as near neighbors on these two respective tracts, the Mortensens making their payments from time to time, and appellant remaining in possession of this east 120

feet, occupying it as his home, cultivating it, and, about a year and a half after the contract in question was entered into, appellant sold the north half of this east 120 feet to a stranger to the record, who went into possession, built a home, and still lives on the property. About the time the contract was entered into, the taxes were segregated by the proper county officials, and appellant has at all times paid the taxes on the land involved in this dispute.

The Mortensens continued to make their payments on this tract until May, 1928, when Mr. Mortensen died, leaving the respondent as his surviving widow. She continued to pay on the contract from the date of the death of her husband until December, 1928. In November, 1928, there arose some question about putting up a new fence between the properties occupied by appellant and respondent. Respondent testified that, "I intended to have Johnston stand half of it. I wanted Johnston to pay half of the cost."

Thereafter respondent decided to pay up the balance of the purchase price and it was necessary to execute a proper deed. Appellant, taking the contract, went to the firm of attorneys who had represented the respondent in the probate proceedings, and from the contract they prepared the deed. The balance of the purchase price was paid, the deed was recorded, and within a few weeks respondent served notice upon appellant that she now had a deed to the entire property and that he must move off. Appellant stated that there must be some mistake and immediately thereafter brought this action to reform the instruments. The action was dismissed at the close of appellant's testimony and this appeal follows.

The sole question presented here is whether or not the facts as detailed above are sufficient to put respondent upon her proof.

This court has often held that evidence entitling one to a reformation must be clear, cogent and convincing, but the acts as we have outlined them above are not in dispute. This deed was given pursuant to the contract. The transaction between the appellant and respondent was in no sense an independent transaction. Respondent had paid the full purchase price as provided in the contract and was entitled to the deed, demanded and received a deed, but the evidence is overwhelming, in so far as the appellant is concerned, that the deed includes property which was not pointed out, and which he did not intend to include in the contract, and his agent, the real estate broker, did not intend to include in the contract. The evidence is overwhelming that, while the contract provides for the payment of taxes by the vendee thereunder, the appellant at all times paid the taxes on the east 120 feet.

The contract gave to respondent and her deceased husband the right of possession, and yet the evidence is undisputed that the appellant at all times retained possession of the east 120 feet, and that without any suggestion that there was any impropriety therein, sold to a stranger to the record, in so far as this case is concerned, the north half of the property retained by him. There is nothing in this record to indicate that the giving of this deed was an independent transaction. On the other hand, the record indicates clearly that the deed was given for the purpose of conveying to respondent the land which had been pointed out to her deceased husband some five years before, and which had been occupied and cultivated for all these years by them; and there is nothing in the record before us to indicate that it was the intention of any party to the transaction that any other or different land should be conveyed to her.

The record does indicate an amazing degree of carelessness on the part of the appellant, but from the testimony introduced by him we cannot gather that it was ever the intention of the appellant to sell or dispose of this east 120 feet in controversy, nor can we gather that it was ever the intention or purpose of the respondent to purchase this east 120 feet. As to the contention of respondent relative to the amount of land involved in the description, we are not now concerned as to what relief, if any, respondent is entitled to, because of this shortage, as that will depend upon the evidence introduced by her. This matter comes to us on the testimony of the appellant alone.

It appears from appellant's testimony that the deed was executed for the purpose of conveying the land purchased under the executory contract of sale. It appears from appellant's testimony that both instruments included land which appellant did not intend to sell and which respondent and her deceased husband did not expect to purchase; land the possession of which was not only not surrendered, but the possession of which was actually retained; land on which they paid no taxes and on which appellant did pay taxes; land a portion of which appellant, with respondent's knowledge and at least passive acquiescence, sold to strangers.

We have often held that instruments may be reformed so that they shall express the true intention of the parties. *Rosenbaum v. Evans*, 63 Wash. 506, 115 Pac. 1054; *Preston v. Hill-Wilson Shingle Co.*, 50 Wash. 377, 97 Pac. 293.

We hold that the plaintiff made a *prima facie* case sufficient to put the respondent on her proof.

Reversed.

MITCHELL, C. J., FULLERTON, MAIN, and HOLCOMB, JJ., concur.