[No. 9260. Department Two. March 18, 1911.]

## T. J. MURRAY et al., *Respondents*, v. THOMAS SANDERSON, *Appellant*.[1]

CANCELLATION OF INSTRUMENTS—GROUNDS—MISTAKE—UNILATERAL MISTAKE. Equity will afford relief by the cancellation of an option on the mistake of only one party as to its meaning, where his manifest intent was to grant an option limited to one year for the purpose of perfecting title, the agreement as drawn failed to express the agreement intended, and after three years the title was not perfected and might never be, and the other party could be placed in his former position without working any injustice.

Appeal from a judgment of the superior court for Okanogan county, Taylor, J., entered July 14, 1910, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action for equitable relief. Affirmed.

[1]Reported in 114 Pac. 424.

*Howard Waterman,* for appellant.

*Geo. S. Lee* and *Martin & Barrows,* for respondents.

Morris, J.—Suit in equity to cancel an option to purchase real estate, upon the ground of mistake. The option was given October 4, 1907, covering agricultural lands in Okanogan county. The consideration was $250, and it was in effect provided that the appellant should have the right to purchase the lands—some one hundred and fifty acres—at $125 per acre, including the water rights appurtenant to the land, at any time during the life of the option. The water rights to the land had never been established by any decree of appropriation, and in order to perfect this right, the respondents agreed to institute legal proceedings whereby such right might be adjudicated and acquired; the option providing that:

"This option is to run for ninety days . . . and it is agreed by said first parties [respondents] that they will have the title to said land and the title to one hundred and twenty-five (125) acres of water from Loop Loop creek for irrigating said land perfected within ninety days from date . . . and in case the title to said land and water is not perfected within said ninety days then it is understood that this option shall extend until such time as the title to said land and water is perfected and it is understood that said first parties will without delay proceed to get a final decree . . . adjudicating how much of a water right for irrigation from Loop Loop creek there is belonging to said land, and what the status of the same is."

It was then provided that, this decree of appropriation having been obtained, appellant was to have a reasonable time to examine the title before concluding his option, and "in case the said parties of the first part fail to perfect said title to said land and to one hundred and twenty-five acres of water for irrigation thereon as aforesaid within one year from date, that said second party may throw up this option," receive back his $250, and be released. The mistake alleged con-

sisted in the failure of the scrivener to limit the option to the period of one year, and to absolutely fix that time as its life. The mistake was denied by the appellant, and issue being joined, the court made findings supporting respondents' theory, and entered a decree of cancellation, and appellant brings the case here.

There can be no question, from a reading of the evidence, that, so far as respondents were concerned, they intended to, and until after the expiration of the year believed they had, limited the life of the option to one year. The only necessity for time was the procurement of a decree establishing the water rights to the land. They were advised by an attorney who drew up the option that this could be done within ninety days, ordinarily, but that it was possible delays might arise which would prevent a final adjudication within that time; but in no event could it be delayed longer than one year. Under this understanding, they fixed the life of the option primarily at ninety days, and inserted the provisions with regard to the proceedings to obtain the water rights and granting the privilege to appellant, in case the water rights were not obtained within one year, he might withdraw therefrom.

From the testimony of respondents it cannot be doubted that they believed that this last provision meant the option should of itself terminate at the end of one year, instead of only at the election of appellant. The attorney who drew up the option says, in regard to this feature, "that one year had been talked about from beginning to end;" and so confident was he that such was the intent of the parties that, although a friend of the appellant of long standing and through whose instrumentality appellant entered into the option, he, when he learned after the expiration of the year that appellant insisted upon holding the option, advised him that respondents could end the option at any time by paying back the $250. Upon entering into the option, respondents at once employed an attorney to obtain an appropriation of

the water of Loop Loop creek for the benefit of this land, when it was discovered that certain Indians claimed rights to these waters, and that, in order to determine the validity and extent of any appropriation of the waters of this creek, these Indians must be made parties and their rights determined, involving proceedings in the Federal courts and before the department of the interior. Other obstacles arose, one of the principal Indian holders died; so that at the end of the year the parties were no nearer to an adjudication of their water rights than they were before, and at this time, three and a half years from the making of the option, the water rights are still undetermined, and there is nothing in the record to indicate when they will be.

The lower court made a finding that, under the circumstances, "it is probable that a decree could never be obtained finally adjudicating the ownership of the waters of said creek." While we would not care to go as far as this, it is nevertheless apparent that it will mean long and tedious proceedings in the Federal courts and before other departments of the Federal government before there would be a final adjudication of the rights of these lands to the waters of Loop Loop creek. So impressed was respondents' attorney, in the water right case but not in this, with the difficulties attending this endeavor, that he advised appellant, before this action was brought, that "they had not been able to clear up the water right, and it was impossible to do so. It was a mistake to begin with." We think these facts bring the case properly within the circumstances under which a court of equity will cancel an instrument for a mistake of one party alone, assuming now that appellant at all times understood the contract to be intended as it now reads, and that the year provision was for his benefit alone.

It is an unquestioned principle of equity that, when an instrument is drawn and executed intending to carry into effect an agreement already entered into, but on account of mistake of the draftsman, or his failure to appreciate or understand

the contract as intended, or from some other cause, the instrument which is intended to express the agreement is insufficient for that purpose, and the manifest intention of the parties is not fulfilled, equity will, under such circumstances, afford adequate relief; because the execution of agreements fairly and legally made is a peculiar branch of equity jurisdiction, and an instrument intended to execute an agreement, which for any reason fails to embody the true agreement, remains as much unexecuted as though one of the parties had refused altogether to comply with it. *Hunt v. Rousmaniere*, 1 Pet. 1; *Walden v. Skinner*, 101 U. S. 577, 583; *Dennis v. Northern Pac. R. Co.*, 20 Wash. 320, 55 Pac. 210. It cannot be doubted, it is said in *Williams v. United States*, 138 U. S. at page 517, that inadvertence and mistake, equally with fraud and wrong, are grounds for judicial interference. *Dietrich v. Hutchinson*, 73 Vt. 134, 50 Atl. 810, 87 Am. St. 698. And while there are many cases holding that, in general, for the mistake of one party to an instrument only, a reformation will not be afforded so as to subject the other party to obligations and conditions to which he never assented, or to bind him to what he never contracted; yet when the parties can be placed in their former positions, and the mistake is clearly established and convincingly shown, the instrument will be cancelled or rescinded for the mistake of one only of the parties. *Benson v. Markoe*, 37 Minn. 30, 33 N. W. 38, 5 Am. St. 816; *Dulany v. Rogers*, 50 Md. 524; *Hearne v. Marine Ins. Co.*, 20 Wall. 488; *Conlan v. Sullivan*, 110 Cal. 624, 42 Pac. 1081; *Diman v. Providence, W. & B. R. Co.*, 5 R. I. 130.

*Fehlberg v. Cosine*, 16 R. I. 162, 13 Atl. 110, thus states the rule:

"Where there has been a material mistake upon one side the court may rescind and cancel the agreement, where it can do so without injustice to the other party. There are two principal classes of cases in which this power of the court is exercised. One includes cases of executory contracts and

the like, where the parties can be put *in statu quo*. In these cases the parties have not, in reality, agreed; their minds have not met; and if one, without fault on his part, has bound himself to something materially different from what he supposed it to be, which can be annulled without loss or injustice to the other side, it is deemed to be inequitable to enforce it."

It seems to us the case before us falls within these equitable principles. Respondents believed they were giving an option that would expire within one year. They promptly endeavored to obtain an adjudication of their water rights, but unforseen obstacles prevented such ascertainment within the ninety days first fixed as the required period, or within the year supposed to be ample to overcome all obstacles. Over three years have elapsed since this option was given. Appellant has not seen fit to exercise it, nor do we know that he ever will. He has lost nothing by the delay. If he surrenders his option, voluntarily or involuntarily, he is by its terms to receive back his $250; while respondents have had their lands tied up for three years, and unless they be granted the relief prayed for, may have them indefinitely tied up, a hardship against which it is the peculiar province of equity to grant relief, where by doing so no wrong can be inflicted upon appellant, who by his conduct has shown he will not purchase the lands until the water rights can be finally adjusted to his satisfaction, a condition that may never happen. Appellant can be placed in *statu quo* by a cancellation of the option, and in the meantime he has had its benefit. No injustice nor hardship will come to him because of its cancellation; while not to do so is to take from respondents the opportunity to sell their lands to others who might not be so insistent upon the adjudication of water rights, and who might be content to hold and occupy them as respondents have without such adjudication.

For these reasons, we approve of the conclusion of the court below that respondents are entitled to the relief prayed for, and the judgment is affirmed.

DUNBAR, C. J., CROW, and CHADWICK, JJ., concur.